(No. 4549— ■■■■■)

ARLIE GRANT, MABLE GRANT, LOIS ANN GRANT, A MINOR, BY ARLIE GRANT, HER FATHER AND NEXT FRIEND, AND BETTY NELL GRANT, A MINOR, BY ARLIE GRANT, HER FATHER AND NEXT FRIEND, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 26, 1954.*

R. W. HARRIS, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

Arlie Grant, Mable Grant, Lois Ann Grant, a minor, by Arlie Grant, her father and next friend, and Betty Nell Grant, a minor, by Arlie Grant, her father and next friend, filed their complaint on March 26, 1953 for personal injuries sustained by them as an outgrowth of an accident, which occurred on July 14, 1952 on State Highway No. 37 in the County of Johnson, State of Illinois, one-half mile south of the Village of Buncombe.

The record consists of the verified complaint, original transcript of evidence, copy of transcript of evidence, abstract, supplemental abstract of evidence, and claimants' and respondent's briefs and arguments. No answer was filed by respondent. Therefore, in accordance with Rule 11 of this Court, a general traverse is considered to have been filed.

On July 14, 1952, Mable Grant, the wife of Arlie Grant, and their two daughters, Lois Ann Grant and Betty Nell Grant, aged four and three years respectively, were riding in a southerly direction on Route No. 37 in a 1941 Chevrolet, owned and driven by Arlie Grant, to which automobile was attached a small trailer. Also riding in the back seat of said automobile was a friend of Arlie Grant by the name of Samuel R. Smith. At or about the hour of 8:00 P.M. on said day, the Grants were driving to Anna, Illinois for the purpose of buying ice for their grocery store, which they owned and operated in Buncombe.

On or about July 14, 1952, employees of the Division of Highways of the State of Illinois were in the process of repairing three small sections of the concrete road south of Buncombe on Route No. 37. The first hole was from one quarter to one half mile south of Buncombe, and was located on the east side of the dividing line to the center of the highway, being the north bound traffic lane. The second repair work was being done about a mile to a mile and a half south of Buncombe, where the concrete was removed on the east side of said highway. The third hole was about four miles north of Goreville. We are concerned only with the first two repair zones south of Buncombe. The concrete removed was rectangularly shaped, extending from the east edge of the pavement to the center line, and was six or eight feet across, and approximately nine inches deep.

Barricades were placed on either side of each hole in the pavement, and were described as "horses", constructed out of two by sixes, painted with black and yellow diagonal stripes, and supported by "A" frames. The same type of barricade was constructed on the east side of the pavement south of the first barricade zone.

Three "pot" type flares were placed on the south of each barricade, and two on the north side of each barricade. The "pot" type flares burned a mixture of gasoline and kerosene, and were the type usually employed by the Highway Department in construction work. Three signs were placed to the south of each hole, which bore the following legends: "Road Repairs Ahead"; "One Way Traffic"; and, "Barricade". These signs were placed approximately two hundred feet apart, with one "pot" type flare at each sign. To the

north of each hole, and, on the opposite side of the road, were two signs bearing the following legends: "Slow", and "One Way Traffic". A flare was also placed at each of these signs.

Assigned to the area in question (being area 940) on the evening of the accident were the employees of the State, who were repairing the highway; namely, Thomas N. Durham, Herbert Billingsley, Sam Cash and Frank Stout, the latter being the foreman. Work was completed at or about the hour of 4:30 P.M. on the day of the accident, and several of the witnesses testified that before they left the job each "pot" type flare was lighted and burning. There was an understanding between the employees, that, in the event of a rainstorm or inclement weather, the foreman, Frank Stout, would return to the area under construction to check the flares. After they left work on that afternoon it rained and blew severely. However, the foreman testified that he went home after work, and remained at home until about eight o'clock, when he first heard that an accident had occurred. From the time he quit work until he heard of the accident, he was not advised of anything concerning the flares, or the signs; and at his farm there was only a trace of rain, and no wind to speak of.

Claimant's witnesses testified that, at the time of the accident in question, no flares were burning at any of the signs, or at or near the barricades south of Buncombe.

On the evening in question, Robert Lavender, a young man approximately 18 years of age, who lived in Vienna, Illinois, left his home in his 1947 Roadmaster Buick, and drove north on Route No. 37 toward Johnston City at approximately 60 miles per hour. He drove

around the barricade approximately a mile and a half south of Buncombe, and, in doing so had to drive on the west side of the pavement, which was damp in spots, and then he continued on at the same rate of speed. As he approached the first repair area south of Buncombe, he saw the Grant car approaching from the north. The witnesses in the Grant car and Lavender testified that they saw the barricades at the hole. Mr. Lavender testified that he applied his brakes, and the front end of his car swung into the lane for south bound traffic in front of the Grant car, and the two cars collided. He further testified that the flares at the barricade were not burning at the time of the collision. He stated that his lights were on dim, and that he saw the lights of the Grant car. After the impact his automobile was on the west side of the pavement in the south bound traffic lane and off of the highway. Mr. Grant's car was headed east and west in the middle of the road. The impact took place between twenty and thirty feet south of the barricade. As to the condition of the road, he testified that it had rained two hours before the accident, and the road was not quite dry at the time of the accident. He further testified that he did not see any signs around the barricade, where the accident occurred, or the "pot" type flares until after the accident. He saw the Grant car a quarter of a mile before the impact, and was fifty yards from the barricade, when he applied his brakes, and the Grant car was one hundred feet north of the barricade at the time he applied his brakes.

Complaints were filed in the Circuit Court of Johnson County, Illinois against Robert Lavender, which were settled, and Covenants Not To Sue were given by or in behalf of each of the claimants, copies of which

are included in the record as exhibits, which show that Arlie Grant gave a Covenant in consideration of the payment of $3,500.00; Mable Grant, $250.00; Lois Ann Grant, $750.00; and, Betty Nell Grant, $500.00.

There is no question but that the 1945 Court of Claims Act in effect recognizes the obligation of the State to maintain and repair the Illinois State Highway System, and, as such, removes the State's sovereign immunity for cases of this type. However, the State of Illinois is not an insurer against all accidents upon its highways, but is required only to keep them in a reasonably safe condition for the purpose to which the portion in question is devoted, and the placing of signs warning of the conditions to be met fulfills the obligation of the State to the users of the highway.

*Terracino* vs. *State*, No. 4420, Opinion filed on January 8, 1952; *Beenes* vs. *State*, No. 4377, Opinion filed on October 5, 1951.

This case can be distinguished from that of *Di Orio* vs. *State*, 20 C.C.R. 53, in that it was a case where a condition was created in the highway, and no notice given to respondent. In said case there was a question as to how long the hole had been in the highway, and whether the State had actual or constructive notice of the defect in the highway.

There is no question but what the burden is upon the claimants to prove by a preponderance or greater weight of the evidence, first, that they were free from contributory negligence, and, secondly, that respondent was guilty of negligence, and that the claimants were injured in person and property by reason of the negligence of the respondent's agents. There was an intervening factor in this case, which we cannot overlook, and, which, in our minds, appears to be the proximate cause of the injuries sustained by claimants. This was

recognized by the insurer of Robert Lavender in buying peace for the amounts set forth in the record. The exhibits referred to are not proper exhibits, and are not influencing the Court in trying to fix the liability, but are only proper in mitigation in reduction of an award, if one is made, and are not to be considered by us now in arriving at our decision in this case.

There is no question but what the claimants had every reason to believe that the car, which they saw approaching from the south, would stay in its proper lane of traffic, and allow them to clear the barricade. Even though claimants testified that there were no lights upon the signs, or around the barricades, they would not have had an accident had the automobile of Robert Lavender not skidded into their lane of traffic. We cannot overlook the fact that the State did have barricades around the excavations, did place "pot" type flares at each sign around the excavations, and did have warning signs on both sides of the road from two hundred to six hundred feet from the barricades. The testimony of Robert Lavender showed that he saw the first barricade, drove his automobile on the opposite side of the road without striking the barricade, saw the barricade where the accident occurred fifty yards prior to reaching it, saw claimants' car at least one hundred feet north of the barricade, and, knowing the condition of the highway, drove his automobile at a speed, which could be considered unreasonable, contrary to Chapter 95½, Sec. 49. It appears from his own testimony that he saw the oncoming vehicle, and did not apply his brakes, or attempt to stop his automobile, until he was too close to the barricade and the oncoming vehicle to avoid the accident in question. It appears to us that it was his negligence, and not the

negligence of the respondent, which was the proximate cause of claimant's injuries. In our opinion, respondent's agents erected a sufficient number of signs, barricaded the excavated portion of the highway, and lighted the flares before leaving their work that afternoon; and, that Frank Stout was not charged with any notice, actual or constructive, that the flares were not lighted at the time of the accident. In that regard, we do not believe that the respondent is chargeable with having someone in constant attendance, so that flares do not go out, but is only required to use ordinary care and caution in erecting and providing a sufficient amount of warning and protection to the traveling public, when work is terminated at the end of a day. In our opinion, the road was left in a reasonably safe condition by respondent's agents, when they left their work at 4:30 P.M. on July 14, 1952.

As to the flares not being lighted at the time of the accident, from the testimony of the employees of the respondent as to the understanding with the foreman, and the foreman's testimony that, after the flares were lighted, he returned home, and that at his farm the wind did not blow, and the rain was slight, one could not say that he would be chargeable with knowledge that the flares were not lighted at the barricade.

As to the amount of rain, his testimony seems to be substantiated by the testimony of Robert Lavender, who stated that the pavement between Vienna and Buncombe was damp only in spots.

In view of all the facts and circumstances relative to the preparations made for warning the traveling public, the conduct of Robert Lavender in the operation of his automobile; and, considering the cases previously decided by this Court and other courts in this State

touching upon the question of proximate cause, it is evident that the claimants have failed to prove their asserted causes of action by a preponderance or greater weight of the evidence. The State is not an insurer of all motorists traveling upon its highways.

Therefore, the claimants' claims filed herein are denied.